IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JULIE LYN SIRCELY, o/b/o minor child, J.C.S., )
)
       Plaintiff, )
)
-vs- )   Civil Action No. 17-71
)
NANCY A. BERRYHILL,[1] )
COMMISSIONER OF SOCIAL SECURITY, )
)
       Defendant. )

AMBROSE, Senior District Judge.

## OPINION AND ORDER

### Background

Plaintiff Julie Lyn Sircely ("Sircely") brings this action on behalf of her minor son, J.C.S., for review of the ALJ's decision denying a claim for child's supplemental security income. Sircely alleges a disability beginning on November 1, 2012. Following a hearing before an ALJ, during which time Sircely, her minor son, and a vocational expert ("VE") testified, the ALJ denied the claims. Sircely appealed. Pending are Cross Motions for Summary Judgment. *See* ECF docket nos. [9] and [11]. The issues are now ripe for review.

### Legal Analysis

1. Standard of Review

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d

---

[1] Nancy A. Berryhill became acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin.

1

37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler,* 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel,* 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

The Social Security Act provides that a child under 18 is "disabled" for purposes of SSI eligibility if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The

Commissioner follows a three-step sequential process in determining childhood disability: (1) whether the child is engaged in substantial gainful activity; (2) if not, whether he or she has a medically determinable severe impairment; (3) and, if so, whether the child's severe impairment meets, medically equals, or functionally equals the severity of a set of criteria for an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §416.924.

An impairment, or combination of impairments, "medically equals" a listing "if it is at least equal in severity and duration to the criteria of any listed impairment." *Torres o/b/o C.N.C. v. Comm'r. of Soc. Sec.*, Civ. No. 16-1743, 2017 WL 3783700, * 2 (D. N.J. Aug. 31, 2017) (citations omitted). "To determine whether an impairment medically equals a listing, the ALJ considers all of the evidence in a claimant's record about the claimant's impairment and its effects on the claimant that are relevant to a finding of medical equivalence." *Torres*, 2017 WL 3783700, * 2 (citations omitted). "If 'the child's impairment does not medically meet a listing … the examiner must determine whether the impairment functionally equals a listing.'" *Torres*, 2017 WL 3783700, * 2, *quoting*, *Jaramillo v. Comm'r. of Soc. Sec.*, 130 Fed. Appx. 557, 560 (3d Cir. 2005). An impairment functionally equals a listed impairment if the child has "marked"[2] limitations in two domains of functioning or an "extreme"[3] limitation in one domain. 20 C.F.R. § 416.926(a). The six domains are: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for yourself; and health and physical well-being. 20 C.F.R. §

---

[2] A "marked" limitation "seriously" interferes with a claimant's ability independently to initiate, sustain, or complete activities. 20 C.F.R. § 416.926(e)(2).
[3] An "extreme" limitation "very seriously" interferes with a claimant's ability independently to initiate, sustain, or complete activities. 20 C.F.R. § 416.926(e)(3).

3

416.926a(b)(i)-(iv). When evaluating the ability to function in each domain, the ALJ considers information that will help answer the following questions "about whether your impairment(s) affect your functioning and whether your activities are typical of other children your age who do not have impairments":

> (i) What activities are you able to perform?
> (ii) Which of your activities are limited or restricted compared to other children your age who do not have impairments?
> (iii) Where do you have difficulty with your activities – at home, in childcare, at school, or in the community?
> (iv) Do you have difficulty independently initiating, sustaining, or completing activities? and
> (v) What kind of help do you need to do your activities, how much help do you need, and how often do you need it?

20 C.F.R. § 416.926a(b)(2)(i)-(vi).

In this case, the ALJ found that J.C.S. was not engaged in substantial gainful activity since the application date and that he has the following impairments, which singularly or in combination, are severe: mood disorder / depressive disorder, anxiety disorder, rule out post-traumatic stress disorder, and attention deficit hyperactivity disorder, combined type. (R. 23) However, the ALJ determined that he does not have an impairment or combination of impairments that meets, medically equals, or functionally equals the severity of a set of criteria for an impairment listed in 20 C.F.R. §§ 416.924, 416.925, and 416.926. (R. 24-41) As a result, the ALJ found that he was not disabled under the Act.

2. Functional Equivalence

Here, Sircely contends that the ALJ erred in failing to find that J.C.S. met the functional equivalence of a Listing. As stated above, a claimant can demonstrate "functional equivalence" by showing a "marked" limitation in at least two domains of

4

functioning. Specifically, Sircely argues that the ALJ's findings that J.C.S. has less than "marked limitation" in the domain of interacting and relating with others and in the domain of the ability to care for himself, is not supported by substantial evidence of record.

The domain of interacting and relating with others "considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language of his or her community, cooperate with others, respond to criticism, and respect and take care of the possessions of others." (R. 36) *See also, Arias v. Comm'r. of Soc. Sec.*, Civ. No. 13-5064, 2014 WL 5092623, * 9 (D. N.J. Oct. 9, 2014). "Interacting and relating with others relates to all aspects of social interaction at home, at school, and in the community." *Gray v. Colvin*, Civ. No., 2014 WL 25793, * 9 (E.D. Pa. Jan. 2, 2014), (R. 36). "Because communication is essential to both interacting and relating, this domain considers the speech and language skills children need to speak intelligibly and to understand and use the language of their community." (R. 36) Here, the ALJ considered Social Security rules applicable both to school-age children without an impairment and to adolescents without an impairment, given that J.C.S. was a school-age child on the date the application was filed and was an adolescent on the date of the decision. (R. 23, 36-37) Thus, the ALJ recognized that a school-age child without an impairment should be able to develop more lasting friendships with their peers; that they should be able to begin to work in groups, understand and tolerate another's point of view; and attach to adults other than parents. (R. 36), *citing* 20 C.F.R. § 416.926a(i)(2)(iv) and SSR 09-5p. Similarly, the ALJ recognized that an adolescent without an impairment should be able to initiate and develop friendships with peers and

5

relate appropriately to other children and adults. Additionally, an adolescent should focus more attention on relationships with peers and less on parents, and develop an increasing desire for privacy. (R.37) The ability to solve conflicts with peers, family members and others outside of the family develops as does the recognition that there are different social rules for dealing with friends as compared to adults. (R. 37) An adolescent without an impairment should also be able to "intelligibly express his feelings, ask for assistance, seek information, describe events, and tell stories, in all kinds of environments … and with all types of people…." (R. 37), *citing*, 20 C.F.R. § 416.926a(i)(2)(v) and SSR 09-5p. The ALJ also considered examples of limited functioning in this domain.[4]

With this backdrop, the ALJ determined that J.C.S. has "less than marked limitation." (R. 38) According to the ALJ, "[t]he evidence demonstrates that with adherence to the medication regimen, ongoing patient counseling, and utilization of coping skills, he has shown a reduction in the inappropriate behavior and the ability to remove himself from the situation." (R. 37-38) The ALJ relied upon, among other things, school records, Teacher Questionnaires, therapist reports, a report from Pressley Ridge, and a state agency psychological consultant's opinion in support of this conclusion. After careful consideration, I find that substantial evidence supports his finding. For instance, as the ALJ noted, J.C.S. does not have a conduct disorder diagnosis. (R. 37) Further, the Teacher Questionnaires support the ALJ's conclusion.

---

[4] The ALJ noted that the examples do not apply to a child of a particular age but cover a range of ages and include a child who: "(i) does not reach out to be picked up and held by a caregiver; (ii) has no close friends, or all friends are older or younger than the child; (iii) avoids or withdraws from people he knows, or is overly anxious or fearful of meeting new people or trying new experiences; (iv) has difficulty playing games or sports with rules; (v) has difficulty communicating with others (e.g., in using verbal and nonverbal skills to express himself, in carrying on a conversation, or in asking others for assistance); or (vi) has difficulty speaking intelligibly or with adequate fluency." (R. 37)

Although a behavior plan was implemented in one particular class in 6th grade, it was not implemented in any others. (R. 37) Additionally, other teachers indicated that J.C.S. had appropriate verbal and social skills. (R. 37) David Condeluci, J.C.S.'s fifth grade homeroom and social studies teacher, noted that J.C.S. "is a very nice kind typical 5th grade boy. He has strengths and weaknesses as any human being possesses. [J.C.S.] is very interested in learning, possesses excellent social skills, and is on his way to becoming a fine well-adjusted young man. He is to be admired for his many fine qualities." (R. 204) A Discharge Summary with Aftercare Plan from Pressley Ridge indicated that J.C.S. became compliant with taking medication following education regarding the importance of it, that he did well with seeking out appropriate coping skills when he felt himself having anxiety attacks and hallucinations, and that his grades increased during the second half of treatment. (R. 540-41) It was noted that J.C.S. "has made great strides with controlling his anger and aggressive behaviors. (R. 541) The Pressley Ridge report also indicated that much of the inappropriate behavior at school stemmed from J.C.S. not having adequate time to socialize and interact with peers. (R. 541) Sircely was encouraged to allow J.C.S. time to engage appropriately with his peers. (R. 542)[5] Finally, the ALJ appropriately relied upon state agency psychological consultant John Vigna, Psy. D.'s opinion that J.C.S. had a "less than marked" limitation in the domain of interacting and relating with others. (R. 32, 79-80)[6] As such, I find that

---

[5] Sircely cites to the persistent disciplinary incidents at school, urging that the incidents cannot be characterized as "humorous" or as J.C.S. attempting to be the "class clown." See ECF docket no. 10, p. 17. I recognize that J.C.S. was disciplined on numerous occasions for fighting and / or using vulgar and offensive language. Yet, as the ALJ noted, records from Mercy Behavioral Health which post-date those incidents indicate that J.C.S. did not engage in any physical aggression with peers or staff, that he was able to have positive peer interaction, and that he showed an ability to verbalize his thoughts, feelings and emotions. (R. 30)

[6] The ALJ "evaluated and considered the opinion of the psychological consultant and gives them great weight because they are consistent with the clinical findings, the longitudinal treatment history, and the school records and teacher questionnaires including the additional records submitted after their review." (R. 33)

the ALJ did not commit an error in concluding that J.C.S. had less than a "marked" limitation in this domain.

The ALJ's finding that J.C.S. "has less than marked limitation in the ability to care for himself" is similarly supported by substantial evidence of record. This domain addresses how well a claimant "maintain[s] a healthy emotional and physical state, including how well you get your physical and emotional wants and needs met in appropriate ways; how you cope with stress and changes in your environment; and whether you take care of your own health, possessions, and living area." 20 C.F.R. § 416.926a(k)[7] School-age children should be independent in most day-to-day activities such as dressing and bathing, and should begin to understand what is right and wrong, and what is acceptable and unacceptable behavior. Adolescents should be increasingly independent and, although at times experience confusion and anxiety about his / her self and body, should begin to discover appropriate ways to express both good and bad feelings. 20 C.F.R. § 416.926a(k)(iv)-(v). The Regulations list, as examples of limitations in caring for oneself: (i) placing non-nutritive or inedible objects in one's mouth; (ii) using

---

[7] The Regulations further provide that: (i) Caring for yourself effectively, which includes regulating yourself, depends upon your ability to respond to changes in your emotions and the daily demands of your environment to help yourself and cooperate with others in taking care of your personal needs, health and safety. It is characterized by a sense of independence and competence. The effort to become independent and competent should be observable throughout your childhood. (ii) caring for yourself effectively means becoming increasingly independent in making and following your own decisions. This entails relying on your own abilities and skills, and displaying consistent judgment about the consequences of caring for yourself. As you mature, using and testing your own judgment helps you develop confidence in your independence and competence. Caring for yourself includes using your independence and competence to meet your physical needs, such as feeding, dressing, toileting, and bathing, appropriately for your age. (iii) Caring for yourself effectively requires you to have a basic understanding of your body, including its normal functioning, and of your physical and emotional needs. To meet these needs successfully, you must employ effective coping strategies, appropriate to your age, to identify and regulate your feelings, thoughts, urges, and intentions. Such strategies are based on taking responsibility for getting your needs met in an appropriate and satisfactory manner. (iv) caring for yourself means recognizing when you are ill, following recommended treatment, taking medication as prescribed, following safety rules, responding to your circumstances in safe and appropriate ways, making decisions that do not endanger yourself, and knowing when to ask for help from others. 20 C.F.R. § 416.926a(k)

self-soothing activities showing developmental regression (i.e., thumb sucking) or restrictive or stereotyped mannerisms (i.e., head banging); (iii) engaging in self-injurious behavior; (v) not spontaneously pursuing enjoyable activities or interests; and (v) disturbed eating or sleep patterns. 20 C.F.R. § 426.926a(k)(3)

Here, the ALJ acknowledged that the record contains references to "nocturnal enuresis and a need to sleep with someone in the room associated with the visual and auditory hallucinations," but found J.C.S. to be otherwise independent in personal care. (R. 39-40) He further cited to Teacher Questionnaires as support for J.C.S.'s "obvious problems with handling frustration appropriately and slight-to-obvious problems utilizing good coping skills," but noted that they also indicate his ability "to remove himself quietly from the situation that was making him angry." (R. 40) The evidence supports his conclusion in this regard. (R. 251) The ALJ also found that the record revealed that, "with ongoing counseling, he is able to utilize appropriate behavior strategies to reduce his frustration level and increase his mood." (R. 40) Again, the record supports the ALJ's conclusions in this respect. (R. 469-495, 540) Similarly, the ALJ's decision is supported by the opinion rendered by John Vigna, the State Agency psychological consultant, who found that J.C.S. had a "less than marked" limitation in the domain of caring for himself. (R. 81) Consequently, the ALJ did not commit an error with respect to his finding regarding J.C.S.'s limitations in the domain of caring for himself.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JULIE LYN SIRCELY, o/b/o minor child, J.C.S. )
    Plaintiff, )
)
  -vs- )   Civil Action No. 17-71
)
NANCY A. BERRYHILL,[8] )
COMMISSIONER OF SOCIAL SECURITY, )
)
    Defendant. )

AMBROSE, Senior District Judge.

## **ORDER OF COURT**

Therefore, this 8th day of February, 2018, it is hereby ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 19) is denied and Defendant's Motion for Summary Judgment (Docket No. 11) is granted.

                                      BY THE COURT:

                                      <u>/s/ Donetta W. Ambrose</u>
                                      Donetta W. Ambrose
                                      United States Senior District Judge

---

[8] Nancy A. Berryhill became acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin.